HAZELRIGG v. NARANJO.	(No. 5621.)*

(Court of Civil Appeals of Texas. San Antonio. Feb. 23, 1916. Rehearing Denied· March 22, 1916.)

1. CONTINUANCE ⊂=23—RIGHT TO—DENIAL.
In an action for the purchase price of horses, where it was not shown that cattle transactions between the parties were material, the denial of a continuance on account of the absence ·of witnesses who could testify as to such transactions was not error.
[Ed. Note.—For other cases, see Continuance,. Cent. Dig. §§ 68–71; Dec. Dig. ⊂=23.]

2. CONTINUANCE ⊂=46(4) — APPLICATION — STATEMENT OF CONCLUSION.
A mere statement of a conclusion as to what would be proven by an absent witness is not a compliance with the statute entitling a. party to a continuance to procure such witness.
[Ed. Note.—For other cases, see Continuance,. Cent. Dig. § 132; Dec. Dig. ⊂=46(4).]

3. CONTINUANCE ⊂=22—ABSENT WITNESSES— RIGHT TO.
In an action for the purchase price of horses, where defendant counterclaimed for duty paid on the horses, and the evidence showed· that neither the seller nor one of his agents had anything to do with the payment of duties, the denial of a continuance requested on the ground of the absence of the seller and such agent, whom it was claimed could testify as to such matters, was not error; for in disposing of such a question the appellate court may consider the evidence.
[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 58–67; Dec. Dig. ⊂=22.]

4. PRINCIPAL AND AGENT ⊂=119(1)—AGENCY —SCOPE—PRESUMPTIONS.
Agency, when once shown to exist, is presumed to be general, and not special.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 391, 393, 398, 399, 401; Dec. Dig. ⊂=119(1).]

5. EVIDENCE ⊂=75—PRESUMPTION—FAILURE TO PRODUCE EVIDENCE.
A party's failure to produce evidence or introduce a witness who is present raises a presumption that such evidence was not favorable to him, and that such witness would not have testified in his behalf.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 95; Dec. Dig. ⊂=75.]

6. PRINCIPAL AND AGENT ⊂=123(10) — ACTIONS—EVIDENCE—SUFFICIENCY.
In a suit for the purchase price of horses, where defendant claimed plaintiff was bound to recompense him for duties paid on the animals,

---

⊂=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

evidence *held* to warrant a finding that defendant's brother, to whom the duties were paid, was defendant's agent authorized to receive payment.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 429; Dec. Dig. ☞123(10).]

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by Francisco Naranjo against J. B. Hazelrigg. From a judgment for plaintiff, defendant appeals. Affirmed.

Hicks, Hicks, Teagarden & Dickson, of San Antonio, for appellant. H. G. Dickinson, of Laredo, for appellee.

MOURSUND, J. Francisco Naranjo sued J. B. Hazelrigg for $2,540 alleged to be due for 127 head of horses and mules sold by Naranjo to Hazelrigg. Hazelrigg admitted that he bought 127 head of horses and mules from plaintiff, through his agent, Vicenta Garza, but alleged that as a part of said agreement he (Hazelrigg) paid the duties, both export and import, from Mexico to the United States, of approximately $10 per head on 200 head of horses, and it was agreed that the same should be repaid to defendant out of the purchase price of said horses, and that thereafter said 200 head of horses were placed in a pasture, and charges of $250 accrued for their pasturage; that thereafter the number of horses was reduced by "death, purchase and claims of others" to about 127 head, and defendant, through an agreement with said Garza, took the same at the rate of $20 per head, with the understanding that the duties as well as the pasturage advanced by defendant should be deducted from the price; and that therefore he only owes to plaintiff $300.

Plaintiff, by supplemental petition, admitted that he was bound to pay the duties, and alleged that through his agent, Segundo Villareal, he paid to defendant $2,000, the full amount of said duties. He denied that he agreed to pay defendant the pasturage, or to deduct same from the purchase price of the horses. Defendant, in answer to such petition, denied the facts therein alleged, and alleged that none of the sums mentioned in his answer had been paid or allowed him. Upon the trial plaintiff agreed that defendant was entitled to an offset of $250 for pasturage paid by him. Judgment was rendered in favor of plaintiff for $2,290.

[1] Appellant complains of the refusal of his first application for a continuance, wherein he alleged that the testimony of plaintiff, Naranjo, and Vicenta Garza was material to his defense. He alleged that he expected to prove by said witnesses that for two years he had been dealing with plaintiff in the buying and selling of cattle, and that during said time they had been running an open account, and that he had paid various sums to the plaintiff, and does not know the exact status of said account, but that said Garza, the manager and agent of Naranjo, has kept accurate account, and that the matter sued on by plaintiff is dependent upon the status of the account between plaintiff and defendant. No effort is made to show in what way there is any connection between the contract for the sale of the horses and the alleged account concerning purchases and sales of cattle. There is no pleading which would make said testimony material, and the allegations in regard thereto were not sufficient to require the granting of the application.

[2, 3] It was further alleged in the application that he had paid the duties on the horses as pleaded by him, and that he was entitled to an offset on the amount of duties paid to the extent of approximately $2,000, and that these facts are known to Garza and plaintiff, and that, if said parties were present, he would be able to show such facts by them, or at least by Garza. It will be noted that appellant refrained from alleging that such duties had not been paid to him by plaintiff, or in his behalf, and leaves such fact to be inferred from the conclusion that he is entitled to the offset. It has been held that the statement of conclusions is not a compliance with the statute. East Texas Land & Improvement Co. v. Texas Lumber Co., 21 Tex. Civ. App. 414, 52 S. W. 645; Earl v. State, 33 Tex. Civ. App. 161, 76 S. W. 207. An appellate court in passing upon an assignment complaining of the overruling of an application for a continuance may look at the evidence taken upon the trial to determine whether the testimony desired was, in fact, material and whether any injury resulted by reason of the absence of the witnesses. Crouch v. Johnson, 7 Tex. Civ. App. 435, 27 S. W. 37; Railway v. Brooks, 132 S. W. 95; Mutual Life Ins. Co. v. Garvin, 141 S. W. 797. Upon the trial it was shown without contradiction that Garza had nothing to do with the transaction with reference to payment of duties, that he was in Monterey at the time, and that Segundo Villareal by direct authority of plaintiff paid to Bob Hazelrigg, appellant's brother, the sum which said Hazelrigg claimed to have paid for duties exacted. In fact, it was made clear that on the single issue to be determined Garza knew nothing and plaintiff knew nothing. Appellant, although in court, failed to testify, and introduced no evidence from which it could be seen that either Garza or Naranjo knew anything concerning such issue. When the application is viewed in the light of the testimony, it is apparent that appellant suffered no harm by the refusal thereof. It therefore becomes unnecessary to discuss the question whether the application shows due diligence. The first assignment is overruled.

[4-6] Appellant contends that the evidence fails to show that the sum paid for duties had been repaid to him. Thos. O'Connor, who was authorized by Naranjo to collect from appellant for the horses, testified that he talked to appellant about the matter, and

appellant admitted the indebtedness for 127 head of horses, but claimed an offset of $250 for pasturage. He did not make any claim that Naranjo owed him for the duties paid. O'Connor testified further that Segundo Villareal was acting as Naranjo's agent in this matter. Segundo Villareal testified that he acted for Naranjo in the delivery of the horses, that he delivered same to Bob Hazelrigg, appellant's brother, and that he paid Bob Hazelrigg $2,000, which was the sum said Hazelrigg claimed he was required to pay as duties. The witness testified that Bob Hazelrigg told him he was acting for appellant. He further testified that Vicenta Garza told him he had sold the horse stock to appellant for $20 per head; that Bob Hazelrigg told witness the Carranzistas wanted $2,000, and witness consulted with Naranjo, and he said it was all right; that said Hazelrigg crossed the stock on June 8th, and on the 10th witness paid him the said sum out for duties; that Vicenta Garza was not present during any of these transactions between witness and Bob Hazelrigg, he being at that time at Monterey, Mexico. It appears from this testimony that the trade between Naranjo and appellant was made before it was undertaken to bring the horses across from Mexico; that Bob Hazelrigg purported to act as the agent of appellant in receiving the horses, paying the duties and collecting the money from Villareal. It appears from appellant's pleadings and admissions to O'Connor that he recognized his brother's agency by receiving the horses through him. Agency, when once shown to exist, is presumed to be general, and not special. It therefore may be presumed that Bob Hazelrigg, in connection with his duty to receive the horses for appellant, had the authority to do everything necessary to be done in connection with the matter. If he used appellant's money to pay the duties, he would naturally be expected by appellant to collect the sum from Naranjo. Having collected the same, it was his duty to pay it to appellant. and, if he failed to do so, it is indeed strange that appellant made no claim in talking to O'Connor about the amount due by him for the horses to the effect that he had not received the sum paid out for duties. It is strange that he would admit his indebtedness for 127 head of horses, with the exception alone that he was entitled to an offset of $250 for pasturage if he was entitled to a further offset of $2,000; in other words that he would admit an indebtedness of $2,540, less $250, if he really only owed $290. The evidence fails to disclose that he himself had anything to do with paying the duties, and if, in fact, he personally paid the duties, as he intimates in his brief might be inferred from the pleadings, then it would seem that, if he did not want his brother, who crossed the horses and had all the dealings with Villareal, to collect the sum from Villareal,

he should have notified Villareal of the limitations he desired to impose upon his brother's authority. The testimony of Villareal is not as clear as it should be; for instance, he testifies that Bob Hazelrigg turned the horses over to him after bringing them over from Mexico, which is inconsistent with the fact that $250 was allowed to appellant for pasturage paid on the stock, which pasturage appellant alleges accrued after the horses were brought across from Mexico. We think, however, the evidence is sufficient to sustain the judgment, and the fact that appellant failed to call as a witness his brother Bob, who was seen by Villareal at Laredo two or three days before the trial, and failed to take the stand himself, although present, as is shown by a recital in the judgment, not only strengthens the probative force of the testimony given, but of itself is clothed with a certain probative force. Jones on Evidence (2d Ed.) § 19.

The court was warranted in concluding that Bob Hazelrigg was the agent of appellant, with full power to do all that Villareal testified he did do, and that, as such agent, he collected the $2,000 which appellant claims should be offset against plaintiff's demand, and that appellant received said sum from his said agent.

The judgment is affirmed.